IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYLER JOHNSON | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-515 |
| TEMPLE UNIVERSITY – | : | |
| OF THE COMMONWEALTH SYSTEM | : | |
| OF HIGHER EDUCATION, ET AL. | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                 **SEPTEMBER  19  , 2013**

Presently before the Court is Defendants Temple University – Of The Commonwealth

System of Higher Education and Professor Richard Greenstein's Motion for Summary Judgment.

(ECF No. 19.)  For the following reasons, Defendants' Motion will be granted.

**I.      BACKGROUND**

**A.      Procedural History**

Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County on

December 9, 2011.  (Compl., Notice of Removal Ex. A., ECF No. 1.)  On January 31, 2012,

Defendants filed a Notice of Removal and removed the action in accordance with 28 U.S.C. §§

1441 and 1446.  (Notice of Removal.)  On December 24, 2012, Defendants jointly filed the

instant Motion for Summary Judgment.  (Defs.' Mot., ECF No. 19; Defs.' Mem., ECF No. 19.)

That same day, Defendants separately filed a Statement of Undisputed Material Facts.  (Defs.'

Statement of Facts, ECF No. 20.)  On January 12, 2013, Plaintiff filed a Response to Defendants'

Motion.  (Pl.'s Resp., ECF No. 21.)  Defendants filed a Reply on January 18, 2013.  (Defs.'

Reply, ECF No. 22.)

In this lawsuit, Plaintiff Tyler Johnson brings three claims against Defendant Temple University – Of the Commonwealth System of Higher Education ("Temple") and one claim against Defendant Professor Richard Greenstein ("Greenstein"). Plaintiff alleges that Temple violated his due process rights (Count I), breached its contractual obligations (Count II), and was unjustly enriched (Count III). (*See* Compl. ¶¶ 12-19.) Plaintiff further alleges that Greenstein violated his civil rights. (*Id.* at ¶¶ 20-21.)

**B.      Factual History[1]**

At all relevant times, Plaintiff was an adult student at Temple. (Pl.'s Resp. 4.) Temple is an educational institution located at 3307 North Broad Street, Philadelphia, PA 19140. (*Id.*) Greenstein is a professor at Temple. (*Id.*)

*1.      The Code*

Temple's Student Code of Conduct ("Code"), promulgated on January 1, 2004, governs student conduct at Temple. (Code, Defs.' Mot. Ex. 5.) The Code provides: "[t]o fulfill its functions of promoting and disseminating knowledge, the university has authority and responsibility for maintaining order and for taking appropriate action, including, without limitation, exclusion of those who disrupt the educational process." (*Id.* at 1.) Article I of the Code defines the key actors and entities involved in the adjudication of alleged violations of the Code. (*Id.* at 2-4.) Article III.C of the Code prohibits "Intimidation" and "Sexual Assault." (*Id.* at 6.) That same provision of the Code references the University Policy on Sexual Assault, which outlines potential sanctions for violations of the policy "subjecting the perpetrator to

---

[1] We view all of the facts and draw all reasonable inferences therefrom in the light most favorable to Plaintiff, the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

disciplinary sanctions up to and including expulsion from the University." (University Policy on Sexual Assault 4, Defs.' Mot. Ex. 6.)

Article IV of the Code outlines the Student Conduct Code Procedures, which govern the process for alleged Code violations. (Code 9-17.) The Code describes a Pre-Hearing Meeting, the Student Conduct Board Hearings ("Hearings"), and the Appeals process. (*Id.*) The University Code Administrator ("Code Administrator") oversees Temple's disciplinary system. (*Id.* at 3-4.) When there is an allegation of a Code violation, the Code Administrator determines whether to charge the student. (*Id.* at 9.) If the student is charged, the Code Administrator is then responsible for notifying the student of the specific charges, the identity of any witnesses, and a description of any physical or documentary evidence filed along with the charges. (*Id.* at 9-10.) The student charged with violating the Code then meets with the Code Administrator at a Pre-Hearing Meeting, which is an informal and non-adversarial meeting at which the charges, the incident, the hearing procedures, and possible sanctions are discussed. (*Id.* at 10.) If the student does not accept responsibility for the charges, the Code Administrator determines the appropriate hearing process. (*Id.*)

Hearings are non-adversarial proceedings conducted by an administrative fact-finding panel ("SCB Panel"), at which the rules of evidence, burdens of proof, and other judicial standards do not apply. (*Id.* at 10-12.) Determinations of whether a student has violated a Code provision are made based on whether the SCB Panel finds that it is more likely than not that a violation occurred. (*Id.* at 11.) At the Hearing, the accused student may offer testimony, witnesses, and other evidence. (*Id.*) The student may request that the Code Administrator's Office secure witnesses for the Hearing. (*Id.*) An accused student may pose questions to a

witness through the presiding Chairperson of the SCB Panel. (*Id.*) The student need not provide

testimony and the SCB Panel may not draw any inference from the student's failure to testify.

(*Id.*) Throughout the process, an accused student may have an advisor or attorney assist them in

preparing for the Hearing. (*Id.*) An advisor or attorney may also be present at the hearing,

although they may not ask questions of witnesses or address the SCB Panel. (*Id.*)

If, at the conclusion of the Hearing, the SCB Panel determines that it is more likely than

not that the accused student violated the Code, the Panel recommends sanctions to the Code

Administrator who then imposes such sanctions. (*Id.* at 12-13.) A student may appeal the

decision reached by the SCB Panel or the sanctions imposed by the Code Administrator to an

Appellate Board. (*Id.* at 16.)

### 2. *Initial Report and Communication of Charges*

On November 17, 2010, J.P., a Temple student, reported an assault to Detective Melanie

Haworth, a member of the Temple Campus Safety Services ("Campus Safety"). (Investigation

Interview Records, Defs.' Mot. Ex. 1.)[2] J.P. described an incident that occurred on November

12, 2010 involving J.P., Plaintiff, and another student, M.E. (Investigation Interview Record 1-

2.) Campus Safety referred the matter to Temple's Office of Student Conduct and Community

Standards. (Student Conduct Referral, Defs.' Mot. Ex. 4.)

As a result of J.P.'s report, on December 13, 2010, Brian Foley, Program Coordinator at

Temple, sent an e-mail to Plaintiff informing him that he had been charged with violating the

Code. (*See* Dec. 13, 2010 E-mail, Defs.' Mot. Ex. 7.) The Charge related to the November 12,

---

[2] To maintain confidentiality, we refer to the other students at Temple involved in the incident and administrative hearing by their initials rather than their full names.

2010 incident, where Plaintiff allegedly violated Article IV.D.3 (Intimidation or Assault) and Article IV.D.4 (Assault) of the Code. (*Id.*) Foley's e-mail set forth the aforementioned charges, included a summary of J.P.'s account of the events, and informed Plaintiff that he was to schedule a Pre-Hearing Meeting, which would provide him with an opportunity to discuss the case and allow him to ask any questions that he might have about the proceedings. (*Id.* at 2.) The e-mail also informed Plaintiff that he could have an advisor present throughout the disciplinary process and encouraged Plaintiff to read the Code prior to the Pre-Hearing Meeting. (*Id.*) The e-mail included a link to the Code and a separate link to Temple's University Policy on Sexual Assault. (*Id.*)

Either right before, or soon after, Temple's holiday break in December of 2010, Plaintiff had his Pre-Hearing Meeting with Foley. (Johnson Dep. 150, Defs.' Mot. Ex. 3.) At that meeting, Foley explained the charges pending against Plaintiff, J.P.'s factual allegations, and the possible sanctions Plaintiff could receive. (*Id.* at 84-87.) Foley told Plaintiff that the most common sanction would be a suspension or probation. (*Id.* at 86.) Foley explained to Plaintiff how the process would play out. (*Id.* at 85.)

On January 14, 2011, Foley contacted Plaintiff by e-mail to inform him that the date for his Hearing had been set for January 21, 2011, that Professor Richard Greenstein would Chair the Hearing, that witnesses would include J.P. and Campus Safety Services Officer/Detective(s), and that the Incident Report and Incident Referral Summary would be introduced at the Hearing. (Jan. 14, 2011 E-mail, Defs.' Mot. Ex. 8.) Foley's e-mail noted that "[t]he documents are available for review by you and your advisor at the Office of Student Conduct . . . ." (*Id.*) Five days later, Foley contacted Plaintiff to inform him that the Hearing was postponed. (Jan. 19,

2011 E-mail, Defs.' Mot. Ex. 9.)  Foley informed Plaintiff that he would be notified when additional documentation would be ready for review.  (*Id.*)

On or around January 21, 2011, Campus Safety Detective Melanie Haworth contacted Plaintiff to discuss the incident.  (Investigation Interview Records 6.)  During the ensuing interview, Plaintiff acknowledged that he was present when the incident occurred, but said that he had his own version of events, which he declined to provide at that time.  (*Id.* at 120-21.)  That same day, Foley informed Plaintiff by e-mail that the Hearing would take place on January 28, 2011.  (Jan. 21, 2011 E-mail, Defs.' Mot. Ex. 10.)  Once again, Foley attached information pertaining to the witnesses and documents that would be offered at the Hearing.  (*Id.*)  The attachment to the January 21, 2011 E-mail referenced an additional set of documents—Temple University's Police Department Incident Report Packet—which contained the interview records of J.P., Plaintiff, and M.E.  (*Id.*)  On January 26, 2011, Foley sent an e-mail to Plaintiff reminding him that the Hearing was scheduled for January 28, 2011, and attached the same information with regard to the witnesses and records to be introduced at the Hearing.  (Jan. 26, 2011 E-mail, Defs.' Mot. Ex. 11.)

Later that day, Foley contacted Plaintiff by e-mail to inform him that his Hearing had once again been postponed and was rescheduled for January 31, 2011.  (January 26, 2011 P.M. E-mail, Defs.' Mot. Ex. 12.)  In the attachment to the e-mail, Foley provided notice of the witnesses and documents to be introduced, adding that N.S., a student at Temple, and Lt. Edward Woltemate of Campus Safety Services, would provide testimony at the Hearing.  (*Id.*)[3]  On

---

[3] Lt. Woletemate was to replace Detective Haworth at the Hearing.  Detective Haworth could not attend.  (Defs.' Statement of Facts ¶ 40.)

January 28, 2011, Foley e-mailed Plaintiff to confirm the Hearing time for Monday, January 31, 2011. (January 28, 2011 E-mail, Defs.' Mot. Ex. 13.) As with the prior e-mails, Foley attached a document indicating the witnesses and documents to be admitted at the Hearing. (*Id.*)

Between the date of the Charge Notice, December 13, 2010, and the date of the Hearing, January 31, 2010, Foley met with Plaintiff five to eight times. (Johnson Dep. 81.) The meetings were brief — approximately fifteen minutes. (*Id.* at 355-56.) During each meeting, Plaintiff received more information from Foley. (*Id.* at 85.) Foley reviewed the Police Incident Report and Incident Referral Summary with Plaintiff. (*Id.* at 107.) Plaintiff repeatedly asked Foley if he needed an attorney and Foley replied that he did not.

Plaintiff informed his parents about the Hearing on January 27, 2011, just four days before it was to take place. (Johnson Dep. 234; Thomas Johnson Affidavit, Defs.' Mot. Ex. 14.) Plaintiff's father, Thomas Johnson, immediately contacted Plaintiff's football recruiter, Ed Foley. (*Id.*) Johnson asked Ed Foley if Plaintiff needed an attorney. (*Id.*) Ed Foley said that the Hearing was informal and that Plaintiff did not need an attorney. (*Id.*) On the day of the Hearing, Johnson again asked Ed Foley if Plaintiff needed an attorney and Foley responded that there would be some disciplinary action, but that it was "nothing to worry about." (*Id.*; Thomas Johnson Dep. 28, Defs.' Mot. Ex. 15.) No one told Plaintiff or his father that they could not retain a lawyer. (Thomas Johnson Dep. 28.) Neither Plaintiff nor his father asked for a postponement of the Hearing. (Johnson Dep. 235.)

### 3. Hearing

The Hearing took place on January 31, 2011 before Greenstein, Rodney Prad (Resident Director), Carey Seymore (Resident Director), Eileen Weinberg (Assistant Director for Graduate

Services), and John Detwiler (Temple student). (Hr'g Tr. 1, Defs.' Mot. Ex. 18; Defs.'

Statement of Facts ¶ 45.) On the morning of January 31, prior to the hearing, Plaintiff and his

father reviewed the documents that were to be introduced at the Hearing. (Johnson Dep. 152-55;

Thomas Johnson Affidavit.) After Thomas Johnson reviewed the Complaint, he asked Brian

Foley, the Code Administrator for the Hearing, if Plaintiff needed a lawyer, and Foley replied

that he did not. (*Id.*) Thomas Johnson then attended the Hearing with his son. (Hr'g Tr. 5.) At

the beginning of the Hearing, all witnesses were administered an oath. (*Id.* at 8.)

Foley provided Plaintiff and M.E. with an opportunity to challenge any member of the

SCB Panel for bias. (*Id.*) Neither of them challenged any member of the panel. (*Id.* at 9.) Each

member of the panel was then asked if there was any reason that they could not be fair and

impartial. (*Id.*) No member provided a reason. (*Id.*) Greenstein, who served as Chair of the

SCB Panel, then asked Plaintiff and M.E. to respond to the charges; both students said that they

were not responsible. (*Id.* at 10.) Greenstein then provided a summary of the process, including

the standard the SCB Panel would use in reaching its determination of responsibility. (*Id.* at 10-

15.) Specifically, Greenstein informed Plaintiff that he would be adjudged individually, that he

could provide an opening statement, could present witnesses, and could testify, although no

negative inference would be reached if he decided not to testify. (*Id.* at 12-14.)

J.P. provided an opening statement. (*Id.* at 16-17.) Plaintiff declined to make an opening

statement. (*Id.* at 17.) Foley then called J.P. on behalf of Temple. (*Id.*) J.P. presented her

recollection of the incident on November 12, 2010. (*Id.* at 17-21.) Greenstein and the other

panel members asked J.P. questions. (*Id.* at 17-27, 30-35.) M.E. and Plaintiff both asked J.P.

questions through Greenstein. (*Id.* at 28-30, 35-38, 40-46.) M.E. testified next. (*Id.* at 47.)

Greenstein and the other panel members questioned M.E.  (*Id.* at 53-57.)  J.P. and Plaintiff directed questions to M.E. through Greenstein.  (*Id.* at 57-59.)  Plaintiff then provided testimony.  (*Id.* at 59.)  He was questioned by the panel.  (*Id.* at 61-67.)  J.P. and M.E. declined to provide questions for Plaintiff to answer.  (*Id.* at 67.)  N.S., J.P.'s housemate and a fellow Temple Student, and Lt. Woltemate also provided testimony.  (*Id.* at 68, 78.)  Plaintiff declined to present witnesses at the Hearing.  (*Id.* at 95.)  J.P., M.E., and Plaintiff each provided a closing statement.  (*Id.* at 96-97.)  The closing statements concluded the fact-finding portion of the Hearing.  The SCB Panel then adjourned to consider the evidence and charges.  (*Id.* at 98.)

When the Hearing resumed, Greenstein informed Plaintiff that the SCB Panel had unanimously concluded that it was more likely than not that J.P.'s version of events was truthful and that Plaintiff's conduct constituted a violation of Sections Three and Four of the Code.  (*Id.* at 100.)  Prior to recommending sanctions, Ed Foley, Director of Football Operations, spoke on Plaintiff's behalf.  (*Id.* at 103.)  J.P. once again read her impact statements.  (*Id.* at 105.)  Plaintiff declined to make any additional statements to the SCB Panel.  (*Id.* at 106-07.)

### 4. *Decision Letter*

Later that day, Foley sent an e-mail to Plaintiff attaching the Decision Letter, which indicated that the SCB Panel had found Plaintiff responsible for Intimidation or Assault and for violating the Sexual Assault Policy.  (Jan. 31, 2011 E-mail, Defs.' Mot. Ex. 19.)  The Decision Letter was authored by Andrea Caporale Seiss, Senior Associate Dean of Students.  (*Id.*)  Seiss recommended sanctions, including suspension from Temple, effective immediately and lasting through the end of the fall 2011 semester (a two semester suspension).  (*Id.*)  In addition, Seiss imposed the sanctions of expulsion from university housing and probation for two calendar years

upon Plaintiff's return to Temple.  (*Id.*)  Foley's e-mail and Seiss's letter provided information regarding the appeals process.  (*Id.*)

> 5.  *Appeal*

On February 3, 2011, Plaintiff's attorney, Joseph Mitchell, requested an extension of the appeal deadline.  (Feb. 3-4, 2011 E-mails, Defs.' Mot. Ex. 20.)  Brian Foley granted the request and the deadline to appeal the SCB Panel's findings was extended to February 10, 2011.  (*Id.*)  Plaintiff filed a timely appeal.  (February 10, 2011 E-mail, Defs.' Mot. Ex. 21.)  Plaintiff's mother sent a supplemental filing to be added to the appeal, which was received by Temple.  (February 11, 2011 E-mails, Defs.' Mot. Ex. 22.)  On February 22, 2011, Foley contacted Plaintiff and his parents by e-mail and attached the Appeal Decision Letter, which reflects that the Appellate Board voted unanimously to uphold the SCB Panel's decision of responsibility and the imposed sanctions.  (Appeal Decision Letter, Defs.' Mot. Ex. 23.)

> 6.  *Post-Suspension*

After Plaintiff was suspended, he enlisted in the United States Coast Guard.  (Johnson Dep. 30-31.)  His commitment to the Coast Guard is eight years, which includes six years of active duty and two years of inactive duty.  (*Id.* at 38.)  Plaintiff has not returned to Temple, nor has he made any attempts to do so.

## II.  LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). Where the nonmoving party bears the burden of proof at trial, the moving party may identify an absence of a genuine issue of material fact by showing the court that there is no evidence in the record supporting the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 325 (1986); *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). If the moving party carries this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely . . . disputed must support the assertion by . . . citing to particular parts of materials in the record."); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (noting that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citations omitted). When deciding a motion for summary judgment, courts must view facts and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Courts must not resolve factual disputes or make credibility determinations. *Siegel v. Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

## III. DISCUSSION

### A. Procedural Due Process Claim (Count I)

Plaintiff contends that Temple violated his procedural due process rights by, *inter alia*: (1) failing to allow Plaintiff to have an attorney to represent him at the Hearing; (2) failing to provide Plaintiff with a meaningful transcript before the Hearing; and (3) revoking Plaintiff's

football scholarship. (Compl. ¶ 13.) In addition, Plaintiff maintains that Temple failed to supply relevant documentation to Plaintiff in time for its effective use at the Hearing, gave the complainant, J.P., enhanced standing, denied Plaintiff the right to cross-examine witnesses, denied Plaintiff the right to counsel at the Hearing, and failed to allow Plaintiff to meaningfully challenge the SCB Panel. (Pl.'s Resp. 13-17.)

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law . . . ." U.S. Const. amend. XIV, § 1. The Due Process Clause is implicated when a student in a school run by a state faces non de minimis sanctions imposed by the school. *See Goss v. Lopez*, 419 U.S. 565, 576 (1975) (finding that student facing a ten-day suspension from a public high school was entitled to the protections of the Due Process Clause). While there is no fixed standard for due process, the concept "implies a flexible standard that varies with the nature of the interests affected and the circumstances of the deprivation." *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 246 (E.D. Pa. 2012) (citing *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988)); *see also Sill v. Pa. State Univ.*, 462 F.2d 463, 469 (3d Cir. 1972) ("[T]he requirements of due process frequently vary with the type of proceeding involved.").

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971). In *Goss*, the Supreme Court held that, at a minimum, the Due Process Clause requires a school to provide an accused student with "oral or written notice of the charges against [the student] and, if [the student] denies them, an explanation of the evidence the authorities have and an opportunity to present [the student's] side

of the story." *Goss*, 419 U.S. at 581. Rather than dictate the terms of each school's unique policy, the Court held only that "in being given an opportunity to explain his version of the facts at this discussion, the student first be told what he is accused of doing and what the basis of the accusation is." *Id.* at 582. The Court explicitly avoided holding that the Due Process Clause requires that hearings afford students the opportunity to secure counsel, to confront or cross-examine witnesses, or even the ability to call his or her own witnesses. *Id.* at 583.

The Third Circuit considered an analogous set of facts in *Palmer v. Merluzzi*, 868 F.2d 90 (3d Cir. 1989). There, a student was suspended from school for ten days and from the football team for sixty days upon admitting to smoking marijuana and consuming beer at the school's radio station. *Id.* at 92. The court concluded that the student received the process contemplated by *Goss* for his suspension from school. *Id.* at 994-95. In light of the Supreme Court's guidance that "longer suspensions or expulsions for the remainder of the school term, or permanently, may require more formal procedures," *Goss*, 419 U.S. at 584, the Third Circuit balanced the interests of the student and the school and concluded that the procedure in *Palmer* was sufficient under the circumstances. *Palmer*, 868 F.2d at 95. In so deciding, the court weighed "(1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). For suspensions exceeding ten days, courts routinely apply the three *Mathews* factors in determining whether the school's procedure was appropriate. *See, e.g.*, *G.C. v. Bristol Twp. Sch. Dist.*, No. 05-4800, 2006 WL 2345939, at *3 (E.D. Pa. Aug. 10, 2006) (finding no violation of due process where victim did not testify at disciplinary hearing).

Inconsistent application of procedures governing a disciplinary hearing may offend due process. In *Furey v. Temple University*, 730 F. Supp. 2d 380, 383, 387 (E.D. Pa. 2010), a Temple student challenged his expulsion from the university after he was found responsible for violating three sections of the Code. The court observed that "[s]ignificant and unfair departures from an institution's own procedures can amount to a violation of due process." *Id.* at 396-97 (citing *Winnick v. Manning*, 460 F.2d 545, 550 (2d Cir. 1972)). In denying portions of the University's motion for summary judgment, the court found that there were significant departures from the Code. These included Temple's failure to recommend a new hearing upon the discovery that a panel member was Facebook friends with the officer that testified and the Vice President of Student Affairs' failure to give presumptive weight to the recommendations of the Review Board. *Id.* at 397. Here, Plaintiff does not allege that Temple departed from the Code, but rather that the Code, as written and as applied, denied Plaintiff due process of the law.

## 1.  *Mathews Factors*

Considering the factors set forth in *Mathews*, clearly Plaintiff's private interests are significant. Plaintiff attended Temple on an athletic scholarship. The imposition of a year-long suspension kept Plaintiff from participating in the school's football program and prevented Plaintiff from obtaining academic credits and advancing towards his degree. Plaintiff relies on *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 157 (5th Cir. 1961) to argue that he was entitled to the most formal procedural protections. (Pl.'s Resp. 16.) However, in *Dixon*, the Fifth Circuit confronted a student facing expulsion. *Dixon*, 294 F.2d at 157. In this case, Plaintiff was suspended and not expelled from Temple. Temple's interests are also significant. Temple is an educational institution that must maintain safety on its campus and protect its student body from

14

intimidation, threats, and sexual assault. *See Furey*, 884 F. Supp. 2d. at 248. The University also has an interest in reducing the fiscal and administrative burdens that a more adversarial litigation system would impose. Finally, the fairness and reliability of the procedures set forth in Temple's Code are sufficient. There is no necessity for additional procedural safeguards.

a.  Notice

As discussed above, in the disciplinary setting, schools must provide sufficient notice and an opportunity to be heard to ensure due process. *Goss*, 419 U.S. at 579. "'[T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved.'" *Hubel v. W. Va. Racing Comm'n*, 513 F.2d 240, 243 (4th Cir. 1975) (quoting *Goss*, 419 U.S. at 579). In *Goss*, oral notice of charges leveled against a student were sufficient. *Goss*, 419 U.S. at 581. In *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005), the Sixth Circuit held that proper notice requires identification of the charged violations and possible penalties. *See Osei v. Temple Univ. of Commw. Sys. of Higher Educ.*, No. 10-2042, 2011 WL 4549609, at *9 (E.D. Pa. Sept. 30, 2011) (finding that plaintiff was on reasonable notice of the charges pending against him and that the notice provided by Temple was sufficient, even where the University failed to identify a witness until the day of the hearing).

Courts within the Third Circuit have considered Temple's Code, including its notice provisions. In *Furey*, the court found that:

> on its face, [the Code] complies with the requirements of procedural due process. The student is provided a notice of the charges against him and a copy of the basis of those charges. The student is given the opportunity to be heard by disciplinary committee members. For serious cases, the University holds a full panel hearing, where the student can hear the testimony against him, testify, and present witnesses and evidence.

884 F. Supp. 2d at 258-59.  We agree that the Temple Code provides due process.  In addition, we conclude that Temple complied with its stated policies and provided Plaintiff with notice that was more than sufficient to satisfy the requirements of due process.  On December 13, 2010, Brian Foley, Program Coordinator at Temple, sent an e-mail to Plaintiff informing him that he had been charged with violating the Code.  (*See* Dec. 13, 2010 E-mail.)  Foley's e-mail set forth the aforementioned charges, included a summary of J.P.'s account of the events, and informed Plaintiff that he was to schedule a Pre-Hearing Meeting, which would provide him with an opportunity to discuss the case and allow him to ask any questions that he might have about the proceedings.  (*Id.* at 2.)  The e-mail also informed Plaintiff that he could have an advisor present throughout the disciplinary process and encouraged Plaintiff to read through the Code prior to the Pre-Hearing Meeting.  (*Id.*)  Embedded in the e-mail was a link to the Code and a separate link to Temple University's Policy on Sexual Assault.  (*Id.*)  Plaintiff then had a Pre-Hearing Meeting with Foley.  (Johnson Dep. 150.)  At that meeting, Foley explained the charges pending against Plaintiff, J.P.'s factual allegations, and the possible sanctions Plaintiff that could receive.  (*Id.* at 84-87.)  Foley told Plaintiff that the most common sanction was a suspension or probation.  (*Id.* at 86.)  Foley also explained to Plaintiff how the process works.  (*Id.* at 85.)

In the ensuing weeks, Plaintiff received a number of e-mails from Foley keeping him up to date on the proceedings, informing him of the charges, identifying the documents and the witnesses that Temple intended to offer at the Hearing, and informing him of his rights under the Code.  (*See, e.g.*, Jan. 14, 2011 E-mail; Jan. 19, 2011 E-mail; Jan. 21, 2011 E-mail; Jan. 26, 2011 E-mail; Jan. 28, 2011 E-mail.)  Between December 13, 2010 and the date of the Hearing, January 31, 2010, Foley met with Plaintiff five to eight times.  (Johnson Dep. 81.)  The meetings lasted

for approximately fifteen minutes.  (*Id.* at 355-56.)  During each meeting, Plaintiff received more information from Foley.  (*Id.* at 85.)  At one meeting, Foley reviewed the Police Incident Report and Incident Referral Summary with Plaintiff.  (*Id.* at 107.)

Plaintiff clearly received sufficient notice of the charges he was facing, the procedures for the disciplinary hearing, and his rights under the Code.

b.     <u>Right to an attorney</u>

Accused students do not have the right to be actively represented by an attorney at a disciplinary hearing.  The general consensus on a student's right to an attorney is that "at most the student has a right to get the advice of a lawyer; the lawyer need not be allowed to participate in the proceeding in the usual way of trial counsel, as by examining and cross-examining witnesses and addressing the tribunal." *Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993).  To require that schools permit students to have counsel that may examine witnesses "would force student disciplinary proceedings into the mold of adversary litigation." *Id.*  A student may nevertheless be entitled to legal counsel at a disciplinary hearing if the student is also facing criminal sanctions for the same underlying conduct. *Furey*, 884 F. Supp. 2d at 252 (citing *Gabrilowitz v. Newman*, 582 F.2d 100, 103 (1st Cir. 1978), *Osteen*, 13 F.3d at 225).

Temple's Code advises accused students that they may retain an advisor and have that advisor with them throughout the disciplinary process.  The Code states that "[t]he Complainant and the Accused Student have the right to be assisted by any advisor they choose, at their own expense.  The advisor may be an attorney." (Code 11.)  The advisor may attend the entire  SCB Hearing.  (*Id.* at 10.)  A lawyer may well have assisted Plaintiff in preparing for and more aptly representing himself at the Hearing.  To that end, Brian Foley repeatedly advised Plaintiff that he

could retain the services of a lawyer, but that it was not necessary for him to do so. (*See* Dec. 13, 2010 E-mail; Jan. 14, 2011 E-mail; Jan. 19, 2011 E-mail; Jan. 21, 2011 E-mail; Jan. 26, 2011 E-mail; Jan. 28, 2011 E-mail.) In fact, Plaintiff's father, Thomas Johnson, said that had Plaintiff informed him of the nature of the charges pending against him at an earlier point, he would have hired an attorney. (Thomas Johnson Dep. 28-29; *see also* Feb. 8, 2011 E-mail, Defs.' Mot. Ex. 17 ("I wish Tyler had said something to us when he first found out, we would have hired a lawyer then.").) Despite Code provisions permitting Plaintiff to retain a lawyer, and ample notice beginning approximately six weeks before the Hearing informing him that he was free to do so, Plaintiff chose not to independently retain a lawyer as his advisor. This was Plaintiff's decision. Plaintiff also chose not to inform his parents of the disciplinary proceedings until four days before the SCB Hearing. (Johnson Dep. 151.) Plaintiff's decisions in no way indicate that Temple violated his due process rights.

Plaintiff was not facing criminal sanctions for his conduct on November 12, 2010. When J.P. gave her statement to the Philadelphia Special Victims Unit, she indicated that she did not want to prosecute Plaintiff or M.E. (*See* Student Conduct Referral.) The Philadelphia Police Department interviewed Plaintiff, but never pursued charges against him. Accordingly, Plaintiff was not entitled to any additional considerations with respect to counsel at the disciplinary Hearing.

Moreover, we cannot say that the additional cost of requiring Temple to provide counsel to Plaintiff and creating a formal adversarial environment would have substantially improved the fairness and reliability of the SCB Hearing. As the Seventh Circuit observed when performing its *Mathews* analysis in *Osteen*, "[t]he cost of judicializing disciplinary proceedings by

recognizing a right to counsel is nontrivial, while the risk of error . . . is rather trivial." *Osteen*, 13 F.3d at 226.

c.    <u>Right to cross-examination</u>

Plaintiff contends that he was denied the right to confront the witnesses against him because he was unable to directly cross-examine the witnesses. (Pl.'s Resp. 15.) Generally, the right to directly cross-examine witnesses is not a necessary part of due process in the student disciplinary context. *See Flaim*, 418 F.3d at 641 (finding no due process violation where student at medical college was able to listen to and observe officer's testimony at disciplinary hearing and had the opportunity to present his version of events); *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 925 (6th Cir. 1988) (finding that the necessity of protecting student witnesses outweighed the value of permitting cross-examination of students and that the burden of permitting cross-examination of administrators outweighed the benefits of such a procedure); *Gorman*, 837 F.2d at 16 ("[S]uffice it to state that the right to unlimited cross-examination has not been deemed an essential requirement of due process in school disciplinary cases."); *Winnick*, 460 F.2d at 549 (finding that while "the right to confront witnesses may be essential in some disciplinary hearings," such a right did not exist where the exercise would have been fruitless in presenting the facts).

In the instant matter, Plaintiff, M.E., and J.P. were all able to functionally cross-examine witnesses by presenting questions to Greenstein to be asked to the witness. Each individual availed himself or herself of that procedure. (Jan. 31 Hr'g Tr. 28-30, 35-38, 40-46, 57-59.) Plaintiff does not suggest that his direct cross-examination of the witnesses would have brought forth exculpatory facts. As the Code permitted, Plaintiff submitted questions through the SCB

Chair, provided his version of events during the Hearing, and presented a closing argument. (*See id.*) We are satisfied that this procedure was sufficient. Due process was not violated here.

### d.    Additional due process challenges

Plaintiff also claims that Temple: (1) enhanced the standing of the complainant, J.P., relative to Plaintiff; (2) did not provide him with a sufficient ability to challenge the SCB Panel; (3) failed to provide him with relevant documentation; and (4) revoked his athletic scholarship in violation of his due process rights. These allegations are meritless.

As discussed above, Plaintiff and J.P. were each provided with an opportunity to present an opening statement, to submit questions to the SCB Panel to be asked to witnesses, to present witnesses, and to offer closing remarks. The Hearing Transcript does not reflect that J.P. received preferential treatment. As Temple argues, pursuant to the Code, Plaintiff and J.P. were permitted to testify in a narrative fashion, were allowed to be present during the entire Hearing, and were able to read prepared statements if they so chose. (Defs.' Reply 6.)

With regard to the composition of the SCB Panel, "in examining administrative proceedings, the presumption favors the administrators, and the burden is upon the party challenging the action to produce evidence sufficient to rebut this presumption." *Gorman*, 837 F.2d at 15. Plaintiff does not now argue that a member of the panel was biased or prejudiced. Moreover, Plaintiff was provided with the opportunity to challenge panel members before the Hearing began and he failed to do so. (*See* Hr'g Tr. 8.) We find no support for Plaintiff's claim that he should have been provided with additional background material with regard to the potential panel members prior to the Hearing. We reject Plaintiff's assertion that under the *Mathews* framework, an accused student is entitled to discovery regarding panel members at a

student disciplinary hearing.  Such a burden would create needless administrative cost that would be unlikely to benefit a student facing administrative discipline.

As to Temple's failure to provide Plaintiff with relevant documentation, Plaintiff contends that Temple did not provide him with a "meaningful transcript" prior to the Hearing. (Compl. ¶ 13.)  Plaintiff also contends that he was not allowed to copy documentation shown to him on the morning of the Hearing.  (Pl.'s Resp. 13.)  A student is not entitled to "discovery" as if he were a litigant in a civil or criminal proceeding.  Schools must, however, provide an accused student with notice of the charges they face and the nature of the evidence to be presented at the hearing.  *See Flaim*, 418 F.3d at 639 (finding that notice was sufficient where the plaintiff was made aware of the charges against him, but was not provided with full witness list or indication of the documents that were to be introduced at the hearing); *Gomes v. Univ. of Maine Sys.*, 365 F. Supp. 2d 6, 22 (D. Me. 2005) (finding no violation of due process where a university failed to produce an entire police report to an accused student prior to a disciplinary hearing in light of "[t]ight time constraints, a general rule against imposing discovery requirements on university disciplinary proceedings, the Complainant's access to the same material from a non-university source, and the Plaintiffs' failure to identify the statement . . . "). The requirement of notice "does not necessarily require students be given a list of witnesses and exhibits prior to the hearing, provided the students are allowed to attend the hearing itself."  *Id.* at 23 (citing *Nash v. Auburn Univ.*, 812 F.2d 655, 662-63 (11th Cir. 1987)).

Here, Foley repeatedly informed Plaintiff by e-mail and personally of the evidence that was going to be introduced at the Hearing.  He also informed Plaintiff that "[t]he documents are available for review by you and your advisor at the Office of Student Conduct, Monday-Friday,

8:30-5:00 p.m." (*See* Jan. 14, 2011 E-mail; Jan. 19, 2011 E-mail; Jan. 21, 2011 E-mail; Jan. 26, 2011 E-mail; Jan. 28, 2011 E-mail.) Plaintiff never made an appointment to review the evidence. Foley even took it upon himself to review the Incident Referral Summary with Plaintiff. (Johnson Dep. 106-07.) On the morning of the Hearing, Plaintiff and his father were given the Investigation Interview Records, which they were able to briefly review. (*Id.* at 152, 155.) Plaintiff has failed to establish that Temple should have a more robust disclosure policy. As the Sixth Circuit observed in *Flaim*, requiring formal discovery in a school disciplinary setting "would be nothing more than an additional and unnecessary expense and administrative burden for the college without any corresponding benefit to [the student]." *Flaim*, 418 F.3d at 639. Temple's conduct satisfied the requirements of due process.

Finally, Plaintiff alleges that Temple violated his due process rights when it revoked his scholarship. (Compl. ¶ 13.) After the Hearing, Foley e-mailed Plaintiff attaching the Decision Letter, which indicated that the SCB Panel found Plaintiff responsible for Intimidation or Assault and for violating the Sexual Assault Policy. (Jan. 31, 2011 E-mail.) Seiss, the Senior Associate Dean of Students, recommended sanctions, including Plaintiff's suspension from Temple, effective immediately and lasting through the end of the fall 2011 semester, expulsion from university housing, and probation for two calendar years upon Plaintiff's return to Temple. (*Id.*) These sanctions are permitted by the Code. (Code 13-14.) Although the Code does not specifically reference athletic scholarships, it does provide that "[w]hen a sanction of suspension is imposed, the student MAY NOT . . . [p]articipate in university registered or recognized clubs or organizations or university sponsored programs, activities, or related events . . ." Plaintiff's due process rights were not violated. (*Id.* at 14.)

The procedures used by Temple to provide notice to Plaintiff of the hearing and the conduct of the hearing itself were perfectly proper. Plaintiff has failed to establish any issue of material fact in support of his claim that his due process rights were violated. Accordingly, Temple's Motion as to Count I must be granted.

**B.      Breach of Contract Claim (Count II)**

Plaintiff alleges that Temple breached its contractual obligations to him by violating covenants in the Temple University Handbook pertaining to the evaluation and dismissal of Plaintiff, failing to allow Plaintiff to have legal representation at his dismissal Hearing, violating Plaintiff's right to know the evidence against him, failing to allow Plaintiff to present exculpatory evidence, and failing to allow Plaintiff to confront the witnesses against him in a fair and impartial manner. (Compl. ¶ 15.) Plaintiff merely repackages his due process arguments as a breach of contract claim.

To establish a claim for breach of contract, a plaintiff must establish (1) the existence of a contract and its terms, (2) the breach of a duty created by the contract, and (3) damages resulting from that breach. *CoreStates Bank v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Temple maintains that Plaintiff has failed to establish the existence of any contract. We agree. Plaintiff's refers to "the university handbook" in Count II of the Complaint. (*See* Compl. ¶ 15.) However, the Supreme Court of Pennsylvania "has declined to construe the student handbook of a public university as a contract between the public university and the student." *Tran v. State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009); *Hart v. Univ. of Scranton*, No. 11-1576, 2012 WL 1057383, at *3 (M.D. Pa. Mar. 28, 2012) (dismissing breach of contract claim where student failed to identify a specific contract provision that was breached); *Manning*

*v. Temple Univ.*, No. 03-4012, 2004 WL 3019230, at *12 (E.D. Pa. Dec. 30, 2004) (acknowledging that "[t]he first page of the handbook, however, states that '[t]he rules, regulations, and information provided in this handbook are announcements only and in no way serve as a contract between the student and Temple University'" and finding no contract between the student and the University).

The only other basis for a contract identified by Plaintiff was his athletic scholarship. (Johnson Dep. 256.)  Temple argues that Plaintiff has failed to point to any provision within his scholarship that Temple violated by suspending him for two semesters, placing him on probation upon his return, and excluding him from University housing.  (Defs.' Mem. 27 n.11.)  We agree. Moreover, as discussed above, Plaintiff has failed to establish that any of his due process rights were violated in any way.  Therefore, even if one were to find that there was a contract in place, Plaintiff cannot plausibly maintain that any of its essential terms were breached by Temple, under the circumstances presented here.

Accordingly, there is no genuine issue of material fact with regard to Plaintiff's breach of contract claim in Count II.

### C.     Unjust Enrichment Claim (Count III)

Plaintiff maintains that Temple was unjustly enriched by accepting services from Plaintiff while failing to allow him to attend courses necessary for him to finish his degree.  (Compl. ¶ 17.)  To establish unjust enrichment, a plaintiff must prove:  (1) benefits conferred on defendant by plaintiff; (2) knowledge or appreciation of those benefits by a defendant; and (3) acceptance and retention of such benefits where it would be inequitable for a defendant to retain the benefits without value under the circumstances.  *Mitchell v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super.

Ct. 1999). Under the equitable doctrine of unjust enrichment, "the law may imply a contract, requiring the defendant to pay to the plaintiff the value of the benefit conferred." *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. Ct. 2004) (citing *Mitchell*, 729 A.2d at 1203).

Plaintiff's claim of unjust enrichment is unfounded. During his time at Temple, Plaintiff had an athletic scholarship. He was a red-shirt freshman on the Temple football team. To the extent Temple received a benefit from Plaintiff, it was from his participation on the football team, for which he was compensated with a scholarship and enrollment at the University. This included the ability to take courses and pursue a degree, free room and board, and free books for his courses. (Defs.' Mem. 29.)

Once the SCB Panel determined that Plaintiff was responsible for violating Sections Three and Four of the Code, Temple stopped accepting any benefits from Plaintiff. At that point, Plaintiff was suspended from the University for approximately a year, excluded from University housing, and placed on probation upon his return to school. (Jan. 31, 2011 E-mail.) Months after the suspension was imposed, Plaintiff joined the United States Coast Guard. (Johnson Dep. 30.) He did not return to Temple and has not attempted to do so. (Johnson Dep. 38.) There was no enrichment after Plaintiff's suspension, let alone unjust enrichment.

### D. Due Process Claim Against Greenstein (Count IV)

Plaintiff brings the due process claims alleged in Count I against Professor Greenstein, who served as the Chairman of the SCB Panel. Greenstein contends that he can not be liable based on the doctrine of qualified immunity. (Defs.' Mem. 29.) The doctrine of qualified immunity shields government officials from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  The applicability of the prophylactic protections of the doctrine is based on two factors:  (1) "whether the plaintiff has alleged that the defendant violated a constitutional right, and [(2)] 'whether the right that was violated was clearly established, or, in other words, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Jarovits v. Monroe Cnty. Children & Youth Servs.*, 345 F. App'x 784, 788 (3d Cir. 2009) (quoting *Curley v. Klem*, 499 F.3d 199, 206-07 (3d Cir. 2007)).  Greenstein is "entitled to qualified immunity if reasonable officials in [his] position at the relevant time could have believed, in light of clearly established law, that [his] conduct comported with established legal standards." *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726 (3d Cir. 1989).

Plaintiff alleges that Greenstein violated his due process rights.  As discussed above, we have determined that Plaintiff's due process rights were not violated.  Plaintiff was provided with adequate notice and an opportunity to be heard.  Even if one were to somehow conclude that there was a violation of due process with regard to the Hearing, we are compelled to conclude that Greenstein is entitled to qualified immunity.  The only specific allegation Plaintiff raises with regard to Greenstein is that he permitted the introduction of hearsay statements and conclusions on the ultimate issue of responsibility by Lieutenant Woltemate.  (Pl.'s Resp. 17.) The Code provides that "[f]ormal rules of process, procedure, and/or technical rules of evidence, as are applied in criminal or civil court, are not used in Student Conduct Board proceedings."

(Code 12.)  This is permissible.  *See Newsome,* 842 F.2d at 926 (citing with approval *Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697 (5th Cir. 1974)); *Tasby v. Estes*, 643 F.2d 1103, 1106 (5th Cir. 1981) ("[R]ights in a student disciplinary hearing may properly be determined upon the hearsay evidence of school administrators who investigate disciplinary infractions."). Accordingly, there was nothing improper about Greenstein's conduct at the Hearing.

Greenstein, a Temple professor, served as the SCB Chairman.  In doing so, his conduct comported with established legal standards in conducting such a hearing.  The claim against Greenstein must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants Temple University – Of The Commonwealth System of Higher Education and Professor Richard Greenstein's Motion for Summary Judgment Motion will be granted.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**