IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYLER JOHNSON | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-515 |
| TEMPLE UNIVERSITY – | : | |
| OF THE COMMONWEALTH SYSTEM | : | |
| OF HIGHER EDUCATION, ET AL. | : | |

**SURRICK, J.**                                                    **JULY  17 , 2014**

## MEMORANDUM

Presently before the Court is Plaintiff Tyler Johnson's Motion for Reconsideration. (ECF No. 27.)  For the following reasons, Plaintiff's Motion will be denied.

## I.      BACKGROUND

### A.      Factual History

The factual background of this case is fully set forth in the comprehensive September 19, 2013 Memorandum and Order granting Defendants Temple University ("Temple") and Richard Greenstein's ("Greenstein") motion for summary judgment.  *Johnson v. Temple Univ.*, No. 12-515, 2013 WL 5298484, at *1-6 (E.D. Pa. Sept. 19, 2013).  By way of general background, on November 17, 2010, J.P., a female Temple student, reported an incident to a member of Temple Campus Safety Services ("Campus Safety").  (Investigation Interview Record, Defs.' Summ. J. Mot. Ex. 1, ECF No. 19.)[1]  The incident, which occurred on or around November 11, 2010, involved Plaintiff, as well as another male Temple student, M.E. (Investigation Interview Record 1-2.)

---

[1] To maintain confidentiality, we refer to the other students at Temple involved in the incident and administrative hearing by their initials rather than their full names.

On December 13, 2010, Plaintiff received an e-mail informing him that he had been charged with violating Article IV.D.3 (Intimidation or Assault) and Article IV.D.4 (Sexual Assault) of the University Student Conduct Code (the "Code").  (Dec. 13, 2010 E-mail, Defs.' Summ. J. Mot. Ex. 7.)  The e-mail contained the specific text of those two sections of the Code, as well as J.P.'s summary of the incident.  (*Id.*)[2]  The e-mail also notified Plaintiff that he was required to schedule a pre-hearing meeting with the Code Administrator to discuss his case and address any questions that he might have about the Code's disciplinary proceedings.  (Dec. 13, 2010 E-mail.)[3]  Finally, the e-mail provided a link to the Code and requested that Plaintiff read it prior to his pre-hearing meeting.  (Dec. 13, 2010 E-mail.)

---

[2] The Code defines intimidation or assault as "[a]ny act or threat of intimidation or physical violence toward another person including actual or threatened assault or battery."  (*Id.*)  The Code defines sexual assault as:

> (a) Any intentional, unconsented touching, or threat or attempt thereof, of: an intimate body part of another person, such as a sexual organ, buttocks or breast; (ii) any bodily part of another person with a sexual organ; or (iii) any part of another person's body with the intent of accomplishing a sexual act or
> (b) Unwanted, inappropriate disrobing of another person or purposeful exposure of one's genitals to another without the other's consent;
> (c) Forcing, or attempting to force, any other person to engage in sexual activity of any kind without her or his consent.

(*Id.*)  The code further provides that:

> Consent is not considered given by a person when he/she is unable to make a reasonable judgment concerning the nature or harmfulness of the activity because of his or her intoxication, unconsciousness, mental deficiency, or incapacity, or if consent is the product of threat or coercion.

(*Id.*)

[3] Article IV of Temple's Policies and Procedures Manual outlines the procedures that govern alleged Code violations.  (Defs.' Summ. J. Mot. Ex. 5.)  The procedures include a pre-hearing meeting, the student conduct board hearing ("Hearing"), and an appeals process.  (*Id.*)

Later that month, at Plaintiff's pre-hearing meeting, the Code Administrator discussed with Plaintiff the pending charges, J.P.'s factual allegations, and the possible sanctions that Plaintiff could receive.  (Johnson Dep. 84-87, 150, Defs.' Summ. J. Mot. Ex. 3.)  Plaintiff was also informed as to how the procedures would play out.  (*Id*. at 84-87.)  After his pre-hearing meeting, but before his Hearing, Plaintiff received a number of e-mails from the Code Administrator.  (Defs.' Summ. J. Mot. Exs. 8, 10, 12.)  The e-mails provided the names of the witnesses who would testify at Plaintiff's Hearing, listed the documents that would be made available to members of the Hearing panel, and informed Plaintiff that the documents were available for his review upon request.  (*Id*.)  Plaintiff also met with the Code Administrator five to eight times prior to his Hearing.  (Johnson Dep. 81.)  During those meetings, the Code Administrator reviewed the Police Incident Report and Incident Referral Summary with Plaintiff.  (*Id.* at 107.)

Plaintiff's Hearing took place on January 31, 2011.  At the begining of the Hearing, Plaintiff and M.E. declined the opportunity to challenge the panel members for bias.  (Hr'g Tr. 9, Defs.' Summ. J. Mot. Ex. 18; Defs.' Statement of Facts ¶ 45, ECF No. 20.)  When questioned by Greenstein, the panel chair, the members all responded that there was no reason that they would be unable to be fair and impartial.  (Hr'g Tr. 9.)  Greenstein informed Plaintiff that he would be judged individually, that he could provide an opening statement, could present witnesses, and could testify, and that there would be no negative inference if he chose not to testify.  (*Id.* at 11-14.)

J.P. provided an opening statement.  (*Id.* at 16-17.)  Plaintiff declined to make an opening statement.  (*Id.* at 17.)  The Code Administrator then called J.P. to testify.  (*Id.*)  J.P. presented her recollection of the incident on November 12, 2010.  (*Id.* at 17-21.)  Greenstein

and the other panel members asked J.P. questions.  (*Id.* at 17-27, 30-35.)  M.E. and Plaintiff both asked J.P. questions through Greenstein.  (*Id.* at 28-30, 35-38, 40-46.)  M.E. testified next. (*Id.* at 47.)  Greenstein and the other panel members questioned M.E.  (*Id.* at 53-57.)  J.P. and Plaintiff directed questions to M.E. through Greenstein.  (*Id.* at 57-59.)  Plaintiff then provided testimony.  (*Id.* at 59.)  He was questioned by the panel.  (*Id.* at 61-67.)  J.P. and M.E. declined to provide questions for Plaintiff to answer.  (*Id.* at 67.)  N.S., J.P.'s housemate and a fellow Temple Student, testified next.  (*Id*. at 68.)  A member of Campus Safety also provided testimony.  (*Id.* at 78.)  Plaintiff declined to present witnesses at the Hearing.  (*Id.* at 95.)  J.P., M.E., and Plaintiff each provided a closing statement.  (*Id.* at 96-97.)  The closing statements concluded the fact-finding portion of the Hearing.  The panel members then adjourned to consider the evidence and the charges.  (*Id.* at 98.)

When the Hearing resumed, Greenstein informed Plaintiff that the panel members had unanimously concluded that it was more likely than not that J.P.'s version of events was truthful and that Plaintiff's conduct constituted a violation of Sections Three and Four of the Code.  (*Id.* at 100.)  Later that day, the Code Administrator sent an e-mail to Plaintiff attaching a Decision Letter, which explained that the panel had found Plaintiff responsible for Intimidation or Assault and for violating the Sexual Assault Policy.  (Defs.' Summ. J. Mot. Ex. 19.)  The e-mail and Decision Letter provided information regarding the appeals process.  (*Id*.)

Plaintiff filed a timely appeal.  (Defs.' Summ. J. Mot. Ex. 21.)  On February 22, 2011, the Code Administrator contacted Plaintiff and his parents by e-mail, informing them that the Appellate Board voted unanimously to uphold the panel's decision and the imposed sanctions. (Defs.' Summ. J. Mot. Ex. 23.)

**B.     Procedural History**

Plaintiff filed a Complaint in the Court of Common Pleas of Philadelphia County on December 9, 2011.  (Compl., Notice of Removal Ex. A., ECF No. 1.)  On January 31, 2012, Defendants filed a Notice of Removal and removed the action in accordance with 28 U.S.C. §§ 1441 and 1446.  (Notice of Removal.)  On December 24, 2012, Defendants jointly filed a motion for summary judgment.  (Defs.' Summ. J. Mot.)  That same day, Defendants separately filed a statement of undisputed material facts.  (Defs.' Statement of Facts.)  On January 12, 2013, Plaintiff filed a response to Defendants' motion.  (Pl.'s Summ. J. Resp., ECF No. 21.)  Defendants filed a reply on January 18, 2013.  (ECF No. 22.)

On September 19, 2013, we filed a Memorandum and Order granting Defendants' motion for summary judgment.  *Johnson*, 2013 WL 5298484, at *1.  On September 30, 2013, Plaintiff filed the instant Motion for Reconsideration.  (Pl.'s Mot., ECF No. 27.)  On October 2, 2013, Plaintiff filed an Amended Memorandum in support of his Motion.  (Pl.'s Am. Mem., ECF No. 30.)  On October 14, 2013, Defendants filed a Response.  (Defs.' Resp., ECF No. 35.)  On October 23, 2013, Plaintiff filed a Reply.  (Pl.'s Reply, ECF No. 38.)

**II.     LEGAL STANDARD**

A party is entitled to have a court reconsider a judgment in the following circumstances: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co*., 52 F.3d 1194, 1218 (3d Cir. 1995)); *see also Interdigital Commc'ns, Corp. v. Fed. Ins. Co*., 403 F. Supp. 2d 391, 392 (E.D. Pa. 2005).  Motions to reconsider will only be

granted for "compelling reasons . . . not for addressing arguments that a party should have

raised earlier." *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010) (quotation omitted).

Whether a motion for reconsideration of a district court's summary judgment ruling is

analyzed under Federal Rule of Civil Procedure Rule 59(e) or Rule 60(b) is unclear.[4]  The

purpose of the motion for reconsideration determines the rule that applies.  *Mash*, 2007 WL

2692333, at *4 (citing *United States v. Contents of Accounts Nos. 3034504504 & 144-07143*,

971 F.2d 974, 987 (3d Cir. 1992)).  The Third Circuit has discussed the difference between Rule

59(e) motions and Rule 60(b) motions:

> Although motions for reconsideration under Federal Rules of Civil Procedure
> 59(e) and 60(b) serve similar functions, each has a particular purpose.  Rule
> 60(b) provides six bases for reconsideration, including mistake, inadvertence,
> surprise, or excusable neglect as alleged by [movant].  In contrast, Rule 59(e)
> permits the filing of a motion to alter or amend a judgment.  A motion under
> Rule 59(e) is a device to relitigate the original issue decided by the district court,
> and used to allege legal error.

*United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) (internal quotations marks and

citations omitted).  In the instant case, Plaintiff does not allege that mistake, inadvertence,

surprise, excusable neglect, or newly discovered evidence justifies reconsideration of our

---

[4] There does not appear to be a consistent approach among the courts in this district;
some courts have treated the motion as one seeking relief from a judgment or order under Rule
60, and other courts have treated the motion as one seeking to alter or amend a judgment under
Rule 59.  *See, e.g., Foster v. Westchester Fire Ins. Co.*, No. 09-1459, 2012 WL 2402895, at *4
n.1 (W.D. Pa. June 26, 2012) (noting that there is "considerable confusion about which rule of
civil procedure provides the basis for motions for reconsideration" but analyzing the motion
under Rule 59(e)); *United States v. Allgyer*, No. 11-2651, 2012 WL 6645540, at *2 n.7 (E.D.
Pa. Dec. 20, 2012) (examining motion to reconsider under Rule 60 where plaintiff failed to
indicate which Rule he wished to use because plaintiff was *pro se* and would have been time-
barred otherwise); *Young v. Sch. Dist. of Phila.*, No. 06-4485, 2010 WL 1006724, at *1 (E.D.
Pa. Mar. 16, 2010) (recognizing that motions for reconsideration are typically analyzed under
either Rule 59(e) or Rule 60(b)); *Mash v. Twp. of Haverford Dept. of Codes Enforcement*, 06-
4479, 2007 WL 2692333, at *1 (E.D. Pa. Sept. 11, 2007) (dismissing as untimely motion for
reconsideration of summary judgment order under Rule 59(e), and noting that to the extent the
motion is brought under Rule 60(b), the motion is denied "because plaintiff failed to present any
new evidence or any 'extraordinary circumstances'").

summary judgment ruling.  Rather, Plaintiff alleges that the Court's "lack of investigation into the fundamental fairness of [his disciplinary] proceedings, under a totality of the circumstances, was an error of law resulting in manifest injustice." (Pl.'s Am. Mot. 5)  Plaintiff's motion is more properly analyzed under Rule 59(e).

## III.   DISCUSSION

Plaintiff makes three arguments in support of his contention that his Hearing was fundamentally unfair:  (1) Temple acted with an improper motive and violated his procedural due process rights by attempting to comply with the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*; (2) Temple failed to provide Plaintiff with notice sufficient to satisfy Section 505.3(1) of the Pennsylvania Code, 22 Pa. Code § 505.3(1); and (3) Plaintiff was not adequately represented by his prior counsel in litigating the underlying action.  (Pl.'s Am. Mot. 11-12.)

Defendants respond that Plaintiff is impermissibly attempting to raise arguments that were not presented to this Court prior to our entry of judgment.  (Defs.' Resp. 7, 8 n.7.) [5] Moreover, Defendants contend that even if Plaintiff's claims are not barred, they fail on their merits.  Finally, Defendants argue that Plaintiff's Motion simply attempts to rehash arguments that we already rejected in our Memorandum and Order granting Defendants' motion for summary judgment.  (Defs.' Resp. 2.)

---

[5] Plaintiff counters that although his argument is a "fact-based, specific claim," it is not a new claim because "[c]laims for violation of due process and, specifically, of bias, were raised in the initial Complaint."  (Pl.'s Am. Mot. 2.)  Plaintiff appears to be attempting to raise the very sort of facts that are barred in a motion for reconsideration.  *See Johnson v. Diamond State Port Corp.*, 50 F. App'x 554, 556 (3d Cir. 2002) ("Motions for reargument or reconsideration may not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.") (quotation omitted).  Nevertheless, we will address the substance of Plaintiff's claims.

A.      **Title IX**

Plaintiff's first argument focuses upon a letter that the Office of Civil Rights (the "OCR") sent to colleges and universities in April of 2011. (Pl.'s Am. Mot. 8-9.) The letter's primary purpose was to focus a school's attention on instances of student-against-student sexual offenses. (*Id*. at 9.) In furtherance of that objective, the letter set forth procedures that schools should follow when responding to reported incidents. (*Id*.) Plaintiff alleges that Temple's pursuit of disciplinary action against him resulted from its "need to comply with the OCR's dictates," rather than from "a sense of justice." (*Id*. at 10.) Plaintiff asserts that he was only targeted for disciplinary action after an unrelated incident generated publicity on campus. (*Id*.) In addition, Plaintiff argues that the OCR's requirement of confidential pre-hearing counseling for victims resulted in the contamination of witness testimony and violated his due process right to confront his accusers. (*Id*. at 11; Pl.'s Reply 2.)

Plaintiff's argument that Temple was motivated by the OCR's guidance letter, "and not the interest of fair fact-finding" is not only sheer speculation, it is untenable. (Pl.'s Am. Mot. 10.) As Defendants point out, the OCR letter was dated April 4, 2011. (Defs.' Resp. 6; Pl.'s Am. Mot. Ex. E.) Plaintiff's disciplinary proceedings and decision occurred in January 2011. We fail to see how Temple could have been motivated by a letter that was not drafted until over two months after the conclusion of Plaintiff's disciplinary proceedings.[6] Moreover, the purported evidence that Plaintiff relies upon in support of his argument is not supported by the facts. The record clearly establishes that J.P. did not file a report with Campus Safety until

---

[6] Plaintiff suggests that "Defendant's Title IX obligations predated the charges brought against Plaintiff" regardless of when the OCR guidance letter was drafted. (Pl.'s Reply 2.) To the extent this is true, Plaintiff's argument nevertheless fails because we have already examined the procedures set forth in the Code and determined that they provided Plaintiff with all of the protections required by the Due Process Clause of the Fourteenth Amendment. *Johnson*, 2013 WL 5298484, at *6-13.

November 17, which was one week after the alleged incident occurred.  (Hr'g Tr. 79.)
Although there is conflicting evidence as to whether J.P. wished to pursue disciplinary
proceedings at the time (Investigation Interview Record 4; Hr'g Tr. 85), it is clear that Campus
Safety began an immediate investigation into the identity of M.E. (Hr'g Tr. 85-86).  That
investigation did not conclude until the week of December 6th when Campus Safety was able to
confirm M.E.'s identity.  (*Id*. at 91, 92.)  Shortly thereafter, Campus Safety interviewed Plaintiff
and M.E. so that they could respond to the charges before the initiation of disciplinary
proceedings.  (*Id*. at 92-93.)  On December 13th, the Code Administrator notified Plaintiff that
he was charged with violating the Code.  This timeline does not reflect any improper motivation
on the part of Temple.

Plaintiff's argument regarding the OCR's confidential pre-hearing counseling
requirement is also without merit.  Plaintiff maintains that as a result of those procedures, "there
is no evidence of what J.P.'s original statement or view of events might have been."  (Pl.'s
Reply 11.)  Plaintiff points out that J.P. was initially unsure of whether she wanted to "move
forward with student discipline" and asserts that "[i]t was only after being coached by [N.S.], a
peer counselor with HEART, that she characterized the encounter as offensive . . . ."  (Pl.'s Am.
Mot. 10.)[7]  Plaintiff also takes issue with the fact that Kate Shaffer, a director at HEART, was
present at the Hearing.  (Pl.'s Reply 3.)  Plaintiff argues that Shaffer's presence created a
conflict because two participants in the Hearing worked for Shaffer.  (*Id*.)  Furthermore,
Plaintiff alleges that Schaffer spoke for J.P. and asked "leading legally significant questions to
rehabilitate [J.P.'s testimony]."  (*Id*.)  Finally, Plaintiff asserts that Greenstein "tried very hard
to get J.P. to agree with his lead by referencing her previous 'statements,' as recorded by
others."  (Pl.'s Reply 3-4.)

---

[7] HEART is Temple's sexual abuse prevention and counseling program.  (Pl.'s Reply 3.)

9

Despite Plaintiff's assertions to the contrary, there is evidence in the record that speaks to J.P.'s original view of the incident.  At the Hearing, J.P. informed the panel that she did not immediately report the incident because she did not feel like the situation was "black-and-white."  (Hr'g Tr. 33.)  Plaintiff further testified that "[a]fter thinking about it a lot in my head and going to talk to other people about it, seeking advice, I realized that this was wrong and that it wasn't okay."  (*Id*. at 31.)  The panel was also made aware of the fact that Plaintiff spoke to N.S., Shaffer, and Campus Safety prior to reporting the incident.  (*Id*. at 32, 43.)  Moreover, Plaintiff was afforded the opportunity to question N.S. and J.P. through Greenstein.  (*Id*. at 42, 77.)  In fact, Plaintiff asked J.P. whether her roommates and friends motivated her to go to the police.  (*Id*. at 42-43.)  J.P. responded that "after talking to [Shaffer] and thinking about it I decided on my own that I wanted to go to the police."  (*Id*. at 43.)  Clearly, Plaintiff was not denied the right to confront his accusers.

The record also contradicts Plaintiff's allegation that "other members of the counseling and discipline network who interpreted and characterized the accuser's statements, had agendas and motivations other than the determination of the truth before them."  (Pl.'s Am. Mot. 11.)  Plaintiff's assertion that Shaffer asked J.P. questions at the hearing is pure speculation.  The questions that Plaintiff attributes to Shaffer are identified in the transcript as being asked by an unidentifiable "Female."  (Hr'g Tr. 32-34.)  These questions may well have been posed by one of the two female members of the panel.  (*See id*. at 1.)  In fact, Shaffer was specifically instructed that she was not permitted to ask questions.  (*Id*. at 6.)  We will not grant Plaintiff's Motion based upon an unsupportable inference.

The record reflects that Plaintiff was given the opportunity to challenge panel members for bias and that each member responded that they would be able to consider the matter in a fair

and impartial manner.  After reviewing the Hearing transcript, one cannot reasonably conclude that a panel member or members exhibited bias or improper motive.[8]

### B.      Pennsylvania Code

Plaintiff next cites Section 505.3 of the Pennsylvania Code in support of his argument that the original notification of the charges against him was inadequate.  (Pl.'s Am. Mot. 11.)[9] Specifically, Plaintiff argues that the notice "did not provide any specificity regarding his challenged behavior [and] it failed to differentiate between him and a fellow defendant."  (Pl.'s Am. Mot 11.)  Plaintiff also argues that he "was not advised that he could be tried separately" and that "[f]ollowing the adjudication, he received essentially the same notice, with no additional specificity."  (*Id.*)  Finally, Plaintiff argues that he "was not, at any time either prior to, during, or after his hearing, given copies of any documents the Defendant wished to use against him other than the prepared statement of J.P."  (Pl.'s Reply 4-5.)  Plaintiff did not reference the Pennsylvania Code prior to our entry of judgment.  We will nevertheless address the argument on its merits.

Section 505.3(1) of the Pennsylvania Code provides that universities must provide students with certain procedural guarantees in the context of disciplinary hearings.  Among the requirements are:

---

[8] Plaintiff contends that in an effort to lead J.P. back when her testimony went astray, Greenstein continuously referred J.P. back to her prior written statements.  (Pl.'s Reply 3.)  For example, Plaintiff contends that a "main argument for conviction" was the claim that he taunted J.P.  (Pl.'s Reply 3.)  Plaintiff contends that J.P. did not use the word "taunting" at the Hearing, and that Greenstein directed her to her prior written statement in an effort to draw out this testimony.  (*Id.* at 3-4.)  However, the transcript clearly reveals that J.P. described Plaintiff's behavior as taunting without any prompting from Greenstein.  (Hr'g Tr. 19, 23, 35.)

[9] In his reply, Plaintiff also cites 22 Pa. Code § 12.8 which governs due process requirements in public schools in cases involving possible expulsion.  (Pl.'s Reply 4); 22 Pa. Code § 12.8(a).

(1) Reasonably specific advanced written notice of charges containing a description of the alleged acts of misconduct, including time, date and place of occurrence and the rules of conduct allegedly violated by the student.
. . .

(8) A written decision in which the facts and reasons are set forth with reasonable specificity which shall be issued within 30 working days after the close of proceedings.

22 Pa. Code § 505.3(1) & (8).  As Defendants note, Section 505.3 applies to institutions that are admitted to Pennsylvania's "State System of Higher Education."  (Defs.' Resp. 4.)  The schools admitted to the State System of Higher Education are identified by statute.  24 Pa. Cons. Stat. §20-2002-A (listing schools that are admitted to the State System of Higher Education).  Temple is not identified by the statute.  *Id*.

We agree with Defendants that Temple is a "state-related" school rather than a member of the State System of Higher Education.  (Defs.' Resp. 4); *Segal v. Temple Univ. Sch. of Law*, No. 99-3220, 1999 WL 1210838, at *1 n.2 (E.D. Pa. Dec. 8, 1999) (finding that "22 Pa. Code § 505.3 covers institutions that comprise the State System of Higher Education, and, as a 'state-related' institution, Temple University and its Law School do not fall into this category").  We further agree that as a state-related school, Temple is "'entitled to establish their own rules and regulations, including disciplinary proceedings, and [that] the courts should interfere only where it is clear that Constitutional rights have been infringed.'"  *Osei v. Temple Univ*., No. 10-2042, 2011 WL 4549609, at *8 (E.D. Pa. Sept. 30, 2011) (quoting *Segal*, 1999 WL 1210838, at *1).  In our Memorandum granting Defendants' motion for summary judgment, we thoroughly analyzed the procedures afforded to Plaintiff and concluded that Plaintiff's due process rights were not violated.

Plaintiff argues that even if Temple is not a member of the State System of Higher Education, 22 Pa. Code § 12.8 and § 505.3 should serve as guidance in our procedural due

process analysis. (Pl.'s Reply 4.) However, even if we were to apply these two regulations, Plaintiff's argument fails. Plaintiff's original notification clearly stated that he was being charged with violating sections Three and Four of Article IV of the Code. The notice included the specific text of those sections as well as J.P.'s incident summary. Plaintiff met with the Code Administrator on multiple occasions to discuss his case and was given a copy of the police incident report. He was given the opportunity to cross-examine J.P. and M.E., to make an opening statement, to testify as to his version of the incident, and to make a closing statement. Plaintiff was notified on multiple occasions of the documents that would be used at his Hearing and was told that they were available for his review. Finally, at the end of his Hearing, the panel informed Plaintiff that they had concluded that it was more likely than not that he had violated Sections Three and Four of the Code. Plaintiff received a notification letter reiterating the panel's findings. That notification letter was sufficient for Plaintiff to file an appeal. Following his appeal, Plaintiff received a denial letter, which again stated that Plaintiff was responsible for violating Sections Three and Four of the Code. For these reasons, as well as the reasons set forth in our Memorandum granting Defendants' motion for summary, we reject Plaintiff's argument.

### C.      Adequacy of Representation

Plaintiff was represented by William C. Reil, Esquire when the instant Complaint was filed. Plaintiff now maintains that he "was not adequately represented by counsel, who was assigned to inactive status during the course of the case due to illness." (Pl.'s Am. Mot. 12.) Present counsel notes that Attorney Reil did not respond to Defendants' statement of undisputed material facts and did not file a surreply to Defendants' reply brief. (*Id.*) Furthermore, present counsel alleges that Reil also represented M.E. and that M.E.'s "disparate treatment before the

[panel] [is] directly relevant to a fair determination of this matter." (*Id.*)  Defendants' counter

that "[a]bsent gross negligence, poor representation by a client's previous attorney who

withdrew from the case is insufficient grounds for revisiting a final judgment." (Defs.' Resp.

10.)

      It is well established that unlike criminal defendants, civil litigants do not have a

constitutional right to effective assistance of counsel, *Kushner v. Winterthur Swiss Ins. Co.*, 620

F.2d 404, 408 (3d Cir. 1980), and are generally "held accountable for the acts and omissions of

their attorneys," *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd*, 507 U.S. 380, 396 (1993).  For

example, in *Mekdeci v. Merrell National Laboratories*, the Eleventh Circuit rejected the

plaintiffs' argument that their attorneys' ineffective performance resulted in a violation of their

due process right to a fair trial.  711 F.2d 1510, 1522-23 (11th Cir. 1983).  While the Court did

not discount the plaintiffs' allegations, it held that "the attorneys' conduct [was] not a ground

for reversing the judgment in the original action."  *Id.* at 1523.  Similarly, in *Deppe v. Tripp*,

863 F.2d 1356, 1365 (7th Cir. 1988), the Seventh Circuit held that "where privately retained

counsel performs inadequately . . . [by] continuing to represent two or more parties

notwithstanding a conflict of interest . . . , the proper remedy is not a new trial, but rather an

action against the attorney for malpractice."  *Id.* at 1365.

      We recognize that Federal Rule 60(b) entitles a party to relief from judgment "upon a

showing of exceptional circumstances." *Boughner. Sec'y of Health & Welfare*, 572 F.2d 976,

978 (3d Cir. 1978).  In *Boughner*, for example, the Third Circuit determined that an attorney's

complete failure to respond to a motion for summary judgment "indicat[ed] neglect so gross that

it [was] inexcusable." *Id.*  The Court held that in light of this neglect, it would have been unjust

to permit the judgment to stand. *Id.* at 979; *see also Defeo v. Allstate Ins. Co.*, No. 95-244,

1998 WL 328195, at *4 (E.D. Pa. June 19, 1998) ("Gross neglect by counsel amounting to abandonment may justify relief under Rule 60(b)(6).").

In the instant case, relief is not warranted under Rule 59 or Rule 60.  There is little support for Plaintiff's claim that he received inadequate representation and there is no evidence that he was prejudiced as a result.  Despite Plaintiff's assertions to the contrary, Reil did file statements of disputed facts.  (Pl.'s Summ. J. Resp. 4.)  Furthermore, Reil's decision not to file a surreply hardly qualifies as the sort of complete abandonment that the Court found inexcusable in *Boughner*.  As Defendants point out, there is nothing in the Federal or Local Rules of Civil Procedure that requires an attorney to file a surreply.  (Defs.' Resp. 11.)  Finally, even if Reil did represent M.E., and even if M.E. did receive disparate treatment before the panel—a contention for which Plaintiff provides no support—a motion for reconsideration is not the proper vehicle for seeking relief.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration will be denied.

An appropriate order will follow.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**

15